**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————

|  |  |
|---|---|
| RASHAAN MURPHY | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| POLICE OFFICER THOMAS | : |
| LICIARDELLO; POLICE SERGEANT | : |
| JOSEPH McCLOSKEY; POLICE OFFICER | : |
| PERRY BETTS;  POLICE OFFICER | : |
| MICHAEL SPICER; POLICE OFFICER | : |
| JEFFREY WALKER, POLICE OFFICER | : |
| DAVIS BADGE NO. 9660; POLICE | : |
| OFFICER NORMAN BADGE NO. 5214; | : |
| JOHN DOE NUMBER 1 THROUGH 10, | : |
| 1515 Arch Street, Philadelphia, PA 19102; | : |
| | : |
| CITY OF PHILADELPHIA | : |
| 1515 Arch Street | : |
| Philadelphia, PA 19102, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

JURY TRIAL DEMANDED

CIVIL ACTION NO. _____

———————————————————

## **COMPLAINT**

### **INTRODUCTORY STATEMENT**

1.      This is an action for compensatory and punitive damages sustained by citizens of the United States against Philadelphia Police Officers, and their employers the City of Philadelphia.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and state law tort claims.   Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(1), (3) and (4) and the aforementioned statutory provisions.

3.      Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law as they arise out of a common nucleus of operative facts.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiff Rashaan Murphy is an adult individual, who, at all times relevant to this matter resided in Philadelphia, Pennsylvania.

6.      Defendant Police Officer Perry Betts ("Officer Betts") was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Officer Betts is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

7.      Defendant Police Officer Thomas Liciardello was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Officer Liciardello is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

8.      Defendant Police Sergeant Joseph McCloskey ("Sergeant McCloskey") was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Sergeant McCloskey is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

9.     Defendant Police Officer Michael Spicer ("Spicer") was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Officer Spicer is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

10.     Defendant Police Officer Jeffrey Walker ("Walker") was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Officer Walker is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

11.     Defendant Police Officer Davis Badge No. 9660 ("Davis"), was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Officer Davis is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

12.     Defendant Police Officer Norman Badge No. 5214 ("Norman") was, at all relevant times hereto, a Police Officer employed by the City of Philadelphia.  Officer Norman is being sued both in his individual capacity and in his official capacity as an employee of the City of Philadelphia Police Department.

13.     Defendants John Doe, Number 1 through 10 are fictious names of individuals, who despite a reasonable investigation their identity remains unknown.

14.     Defendant Betts, Liciardello, McCloskey, Betts, Spicer, Walker, Davis, Norman and John Doe Numbers 1 through 10  are collectively referred to as Police Defendants.

15.     Upon information and belief, at all times relevant hereto the Police Defendants were acting under color of state law, pursuant to official policy, custom or practice of the City of Philadelphia and/or its Police Department.

16.     Defendant the City of Philadelphia operates, manages, directs and controls the Police Department of the City of Philadelphia. The Police Department of the City of Philadelphia, at all times relevant hereto, employed the Police Defendant and their supervisors.

## FACTS

14.     For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

15.     Not only has the City of Philadelphia has failed to take appropriate remedial measures to prevent misconduct of this nature, it adopted an official policy that helps foster such misconduct.

16.     In January 2009, the Philadelphia Police Department implemented a written policy that requires supervisors to remove from all police paperwork the names of police witnesses who possess exculpatory information. In pertinent part, that policy states:

> Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.

17.     The meaning of the phrase "successful outcome" is so obvious that it is not defined further.

18.     Pursuant to the Policy, Police supervisors are required to remove from all police paperwork the names of any police officer that witnessed events, which would be useful by a defendant in a criminal case, because such officers would not "ensure" a "successful outcome." In other words, the City of Philadelphia, by and through its Police Department, officially adopted a written policy to enforce a code of silence or "blue code," which prohibits Officers from

4

intervening or providing truthful information against constitutional violations and other unlawful misconduct committed by their fellow Officers.

19.    That "successful outcome" means conviction is further evinced by the fact that the Standard Operating Procedures implementing the Memorandum state that "only those officers necessary for prosecution will be subpoenaed to court."

20.    Philadelphia Police Department, Commissioner Charles Ramsey's implementation of the written policy, just memorialized what had been an unofficial policy and/or custom of the Philadelphia Police Department at the time plaintiff was arrested and before. 15. On June 22, 2006, although other defendant officers were present, plaintiff was, according to the Court Docket, arrested by Defendant, Liciardello.

21.    On or about June 22, 2006, Plaintiff Rashaan Murphy was arrested and charged with various charges, including Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver.  He was sentenced on August 24, 2007 , to Confinement 2 to 4 years, Probation 4 years, Confinement 1 to 3 years, Probation 4 years merged, even though he was not guilty of any of the charges.

22.    In furtherance of Plaintiff's arrest and prosecution, the Police Defendants submitted Investigation Reports that contained false statements.  The information contained in the Police Investigation Reports as well as the Philadelphia Police Department Arrest Report was false.  A copy of the Philadelphia Police Department Arrest Report is incorporated herein by reference.

23.    The foregoing sworn statement was false.  Nevertheless, Defendant Liciardello falsely swore that it was true.  Defendant Liciardello knew at the time he made the statement and, at all times relevant hereto, knew that the contents of the statement were false in that, the statement

described drug dealings and drug possession activity attributed to the Plaintiff and others when, in fact, no such drug dealing or drug activity occurred.

24.    As a direct and proximate result of the foregoing, Plaintiff was wrongfully incarcerated and sentenced.

25.    On or about July 30, 2014, all of the Police Defendants were indicted by the United State of America and charged with robbery, falsification of records, RICO and related crimes.

26.    On September 29, 2014, the Defender Association of Philadelphia filed a Motion for New Trial Based Upon After Discovered Evidence; Alternatively, for Post-Conviction Collateral Relief; or Alternatively, for Writ of Habeas Corpus (the "PCRA Petition"). The Petition was granted by Order dated September 27, 2019.

27.    Plaintiff did not commit the crimes. Plaintiff suffered significant harm as the result of the Defendants' conduct, including, but not limited to:

   a.    Imprisonment;

   b.    Loss of liberty and freedom;

   c.    Embarrassment and humiliation;

   d.    Loss of life's pleasures;

   e.    Emotional distress;

   f.    Deprivation of property;

   g.    Interference with daily activities;

   h.    Loss of earnings;

   i.    Loss of earnings capacity;

   j.    Loss of credit and credit worthiness;

28.    Plaintiff's damages were a direct and proximate result of the wrongful conduct of the Defendants, jointly and severally, as set forth in this Complaint.

29.    The conduct of the Police Defendants was outrageous and was carried out in reckless, wanton, willful and/or intentional disregard of the rights and welfare of Plaintiff, thereby warranting an award of punitive and exemplary damages against them.

### COUNT I
### ASSAULT
### Plaintiff v. Police Defendants

30.    Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

31.    The Police Defendants' misconduct caused harmful and/or offensive contact with Plaintiff and placed Plaintiff in reasonable apprehension of imminent harmful and/or offensive bodily contact.

32.    Plaintiff was injured by the Police Defendants' misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

### COUNT II
### FALSE ARREST AND FALSE IMPRISONMENT
### Plaintiff v. Police Defendants

33.    Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

34.    The intentional misconduct of the Police Defendants caused Plaintiff to be arrested, detained and imprisoned, without probable cause, against their will.

7

35.    The Police Defendants' intentional misconduct caused criminal proceedings to be commenced and maintained against Plaintiff to accomplish a purpose for which criminal proceedings were not designed resulting in Plaintiff's imprisonment.

36.    Plaintiff was injured by the Defendants' misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

## COUNT III
### NEGLIGENCE AND GROSS NEGLIGENCE
### Plaintiff v. Police Defendants

37.    Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

38.    The actions of the Police Defendants breached duties they have to citizens such as Plaintiff and proximately harmed Plaintiff such they those actions constitute negligence and/or gross negligence under Pennsylvania law.

39.    Plaintiff was injured by the Police Defendants' misconduct.

## COUNT IV
### MALICIOUS PROSECUTION/ABUSE OF PROCESS
### Plaintiff v. Police Defendants

40.    Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

41.    The Police Defendants, in furtherance of their own agenda, maliciously, intentionally and unlawfully caused Plaintiff to be prosecuted for crimes he did not commit.

42.    Plaintiff was injured by the Police Defendants' misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Police Defendants

43.     Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

44.     Plaintiff suffered emotional distress due to the Police Defendants' misconduct.

45.     Plaintiff was injured by the Police Defendants' misconduct as set forth above.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Police Defendants

46.     Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

47.     Plaintiff suffered emotional distress as a direct and proximate result of the Police Defendants' misconduct.

48.     Plaintiff was injured by the Police Defendants' misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

## COUNT VII
## VIOLATION OF PLAINTIFF'S RIGHT UNDER
## THE PENNSYLVANIA CONSTITUTION
### Plaintiff v. Police Defendants

49.     Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

50.     The Constitution of the Commonwealth of Pennsylvania guarantees that each citizen of the Commonwealth of Pennsylvania, including the Plaintiff, shall be free from searches and seizures and guarantees various rights, including the right to be free from false accusations and seizure of his property without cause. Defendants violated all of these rights guaranteed to the Plaintiff.

51.     Pursuant to Pennsylvania's Constitution and other laws of the Commonwealth of Pennsylvania, Plaintiff has the right to be free from arrest without probable cause was shown, to be free from being imprisoned without probable cause being shown, to be free of illegal searches without probable cause and to be free of seizure of his property without probable cause.

52.     Pursuant to Pennsylvania's Constitution and other laws of the Commonwealth of Pennsylvania, Plaintiff had the right to have the charges filed against him set forth above to be competently and fully investigated by the police before he was formally charged with the above-stated crimes and to have due process before his property was seized.

52.     As a direct result of the Defendants' violation of Plaintiff's Pennsylvania Constitutional Rights and other laws of the Commonwealth of Pennsylvania, Plaintiff was falsely charged with the crimes set forth above, imprisoned, illegally searched had his property seized and suffered the damages set forth above, all to his great financial, physical and emotional loss.

53.     Plaintiff was injured by the Police Defendants' misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

## COUNT VIII
## 42 U.S.C. § 1983
## Plaintiff v. City of Philadelphia

54. Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

55. Plaintiff was damaged and injured as set forth above under 42 U.S.C. § 1983 by Police Defendants in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

56. Prior to Plaintiff's initial arrest, the City of Philadelphia developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

57. It was the policy and/or custom of the City of Philadelphia to cover-up and avoid detection of improper and illegal police activity, including excessive force, unlawful detention, failure to intervene against other officers' illegal conduct, false imprisonment, assault and battery, and infliction of emotional distress.

58. It was the policy and/or custom of the City of Philadelphia to fail to sufficiently supervise against, train and/or re-train against, and discipline against illegal police activity, including but not limited to excessive force, unlawful detention, failure to intervene against other officers' illegal conduct, assault and battery, false imprisonment, and infliction of emotional distress.

59.    There has been a longstanding history, which has been extensively documented since the 1980s, of Philadelphia Police Officers engaging in rampant illegal conduct in narcotics investigations. A non-exhaustive list of such conduct includes:

a.    In the early 1980s, in the "One Squad Scandal," a group of Philadelphia narcotics officers were convicted of selling drugs that they had stolen from dealers.

b.    During the decade between 1980-1989, a lieutenant and three officers from another drug unit, the "Five Squad," engaged in conduct including the theft of drugs and over $280,000.00 that resulted in federal convictions for, *inter alia*, racketeering.

c.    In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th Police District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over 40 Philadelphians. These officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects.

d.    Federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics Officer John Boucher was a potentially corrupt police officer.

e.    In the last five years, numerous narcotics officers -- including, as described *supra*, some and/or all of the Police Defendants in this matter -- have engaged in conduct causing them to have been removed from the narcotics assignments. In the last five years, as the result of a series of articles by Philadelphia Daily News reporters known as "Tainted Justice," Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna, and Thomas Deabler have all been assigned to either desk duty or non-narcotics related assignments. Those officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide their conduct, which included theft of cash and groceries. Officer Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving

a confidential informant who subsequently denied having provided information or services on many of the cases in which Officer Cujdik affirmed he had.

        f.     In a letter dated December 3, 2012, the District Attorney of Philadelphia, Seth Williams, announced that in an exercise of "prosecutorial discretion," his office would refuse to prosecute, charge cases, or approve any search or arrest warrants in which the following officers, many of whom had worked extensively with Defendant Walker, are or were involved:

        i.     Police Officer Thomas Liciardello;

        ii.     Police Officer Brian Reynolds;

        iii.     Police Officer John Speiser;

        iv     Police Officer Michael Spicer;

        v.     Police Officer Perry Betts; and

        vi.     Lieutenant Robert Otto.

This decision rested on knowledge that some and/or all of the aforementioned officers had engaged in conduct raising questions about their credibility, integrity and law-abidingness while on duty. At the time of this letter, and for years before, law enforcement and city officials at the highest levels knew of, should have known of and/or were willfully blind to the integrity, corruption, and civil rights violation issues involving some and/or all of the Police Defendants and the NFU. Federal agents and federal prosecutors knew. The current Philadelphia Police Commissioner, his predecessors, and some of his subordinates knew. Former District Attorney Lynn Abraham and some of her subordinates, as well as her successor in office knew. The basis of this knowledge was information from multiple sources including, but not limited to, federal investigations, internal investigations, questions raised by state and federal prosecutors, other lawsuits and other sources.

60.    A Philadelphia *Daily News* investigation found that since 1999, there have been at least 15 civil rights lawsuits filed against the officers in the foregoing paragraph with accusations ranging from stealing to performing illegal searches and planting drugs on purported suspects and which resulted in the City of Philadelphia paying $777,500 in settlements. Additionally, according to source information, the United States Attorneys Office has declined to use the Police Defendants identified in the preceding subparagraph as witnesses in Federal prosecutions for a period of at least two years preceding December 2012 (i.e. back to at least December 2010) because of their known unreliability and history.

a.    In May of 2013, Philadelphia Police Officer Jeffrey Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, *inter alia*, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of a firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully ... " The criminal complaint against Walker described the manner in which he robbed purported suspected drug dealers of both drugs and money. In recordings apparently obtained by the FBI, Walker described the manner in which he would confiscate a large portion of a purported suspected drug dealer's drugs for himself and report only a small portion of what he actually found in the police report. In addition, he described a scam to plant drugs in a purported suspected drug dealer's car so that he could arrest the purported suspected drug dealer, take the purported suspected drug dealer's keys, and then use the purported suspected drug dealer's keys to enter the drug dealer's abodes and steal money. In one such case, he apparently stole $15,000.

b.     In January 2014, the Philadelphia Police Department removed Police Officer Linwood Norman (Jeffrey Walker's former partner) for misconduct related to Walker's misconduct.

c.     On or about January 17, 2014, Police Commissioner Ramsey removed Police Officers Thomas Liciardello, Michael Spice, Perry Betts, Brian Reynolds and Sergeant Joseph McCloskey from street duty, relieved them of their police powers, and took their department issued fire-arms for the stated reason they are the subject of a federal grand jury probe as well as an ongoing joint investigation involving the Philadelphia Police Department Internal Affairs Division, the Federal Bureau of Investigation and the United States Attorney's Office.

61.     It was the policy and/or custom of The City of Philadelphia to inadequately supervise and train its police officers, including the Police Defendants, and to tolerate, if not encourage, a code of silence or "blue code" whereby police officers refused to intervene against or provide truthful information with respect to constitutional violations and other unlawful misconduct committed by their fellow officers.

62.     The policies, customs and usages, all maintained with deliberate indifference, included, but were not limited to:

a.     Failure to supervise, monitor or properly train police officers in the proper exercise of police powers;

b.     Failure to supervise, monitor or properly train police officers adequately regarding false arrest, malicious prosecution, and citizens' constitution, criminal and civil rights;

c.     Failure to supervise, monitor or properly train police officers regarding their duty to report and disclose misconduct and illegal actions of other officers;

d.    Failure to supervise or monitor police officers whose conduct it knew violated constitutional and legal requirements;

e.    Failure to appropriately supervise, investigate, or discipline defendants and other officer's it knew violated citizen's rights on a repeated basis, and/or repeatedly provided false or fabricated evidence in the course of investigations, arrests and prosecutions.

Upon information and belief, with respect to the Police Defendants and other Police officers, the City and its high-ranking officials were aware for a substantial amount of time prior to the aforesaid prosecution of the Plaintiff, of numerous facts and circumstances from which it did know, or could have and should have known, that Police Defendants were engaged in a longstanding pattern of illegal and unconstitutional conduct consistent with the conduct by which they victimized Plaintiff.

63.    Such facts and circumstances included but were not limited to:

a.    Numerous citizen complaints against the Police Defendants;

b.    Numerous civil lawsuits against the Police Defendants and discovery obtained therein;

c.    Numerous complaints by other officers, including complaints forwarded to the Department's Internal Affairs Division;

d.    Numerous successful motions to suppress evidence purportedly obtained by the officers in the course of their investigation.

64.    Despite these facts and circumstances, and the known conduct of the Police Officer Defendants, the City and its officials remained deliberately indifferent to them and the risks they engendered for the violation of citizens' rights, and failed to take any meaningful actions to address them.

65.     Further, the City of Philadelphia is deliberately indifferent to the need to train, supervise, and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

a.     There are excessive and chronic delays in resolving disciplinary complaints; There is a lack of consistent, rational, and meaningful disciplinary and remedial actions;

b.     There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct;

c.     Internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;

d.     Discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not penalized in proportion to the number of violations;

e.     Conduct of IAD officers demonstrates that internal affairs personnel are inadequately trained and supervised in the proper conduct of such investigations; Global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;

f.     There are serious deficiencies in the quality of IAD investigations and the validity of the IAD's findings and conclusions;

g.     The Philadelphia Police Department lacks an effective early warning system to identify, track, and monitor problem officers;

h.     Despite the fact that the Police Defendants and others assigned to the NFU had amassed an exceptionally large number of serious misconduct complaints, the officers stayed well below the radar of any early warning system.

i.      Despite numerous prior complaints against the Police Defendants, the Philadelphia Police Department took no meaningful disciplinary or remedial actions;

j.      Despite numerous prior complaints against the Police Defendants, the Philadelphia Police Department took no meaningful steps to more closely monitor, retrain, and supervise the officers;

k.      IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by lAD are below standards of acceptable police practice and fail to address key issues in the cases.

66.     As a result, the Police Defendants operated in a culture that facilitated and encouraged their unconstitutional misconduct, a culture that was so firmly established as to compromise a policy, custom or usage of the City of Philadelphia, and, resulted in harm to Plaintiff.

67.     As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Police Defendants, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.  Plaintiff was injured by the Defendant City of Philadelphia's misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

**COUNT IX**
**42 USC § 1983**
**Plaintiff v. Police Defendants**

68.     Plaintiff incorporates all prior and subsequent paragraphs as though set forth fully herein.

69.    As a direct and proximate result of the Police Defendants' conduct, Plaintiff sustained injuries. The Police Defendants violated Plaintiff's Constitutional rights while acting under color of state law. The Police Defendants misconduct was directed at Plaintiff and was designed to and did in fact cause Plaintiff to be deprived of his Constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, which rights, included the right to be free from unreasonable searches and seizures and the right to due process:

a.    Manufacturing false evidence, committing perjury, suborning perjury, and otherwise causing the arrest and prosecution of the Plaintiff for crimes which the Defendants knew that the Plaintiff did not commit;

b.    Excessive force by intentionally causing harmful and/or offensive contact with Plaintiff;

c.    Assault by intentionally placing Plaintiff in reasonable apprehension of imminent harmful and/or offensive bodily contact;

d.    Unlawful arrest by intentionally arresting Plaintiff unlawfully, without probable cause, and against Plaintiff's will;

e.    Unreasonable and unjustifiable search of Plaintiff's person and property and seizing Plaintiff's belongings without lawful or constitutional justification.

f.    Malicious prosecution by seizing and arresting Plaintiff and instituting criminal proceedings against Plaintiff without probable cause and with malice. These proceedings terminated in favor of Plaintiff.

g.    By conspiring and acting in concert with one another to violate Plaintiff's civil and Constitutional rights.

70.    Plaintiff was injured by the Police Defendants' misconduct.

WHEREFORE, Plaintiff demands judgment in their favor and against all in an amount in excess of $150,000 including: Compensatory and punitive damages; attorneys fees, and all other relief this court deems just.

Respectfully submitted,

**KENNY, BURNS & MCGILL**

Date:  September 27, 2021          By:    _/s/Thomas D. Kenny_____
Thomas D. Kenny, Esquire
filings@kennyburnsmcgill.com
Eileen T. Burns, Esquire
eburns@kkennyburnsmcgill.com
1500 John F. Kennedy Blvd.
Suite 520
Philadelphia, PA 19102
Office: 215-423-5500
Fax:215-231-9847

Attorneys for Plaintiff
Rashaan Murphy

## <u>JURY TRIAL DEMAND</u>

Plaintiff Rashaan Murphy demand a trial by jury as to each count.

**KENNY, BURNS & MCGILL**

Date:  September 27, 2021                    By:      /s/ Thomas D. Kenny_____
                                                                 Thomas D. Kenny, Esquire
                                                                 filings@kennyburnsmcgill.com
                                                                 Eileen T. Burns, Esquire
                                                                 eburns@kennyburnsmcgill.com
                                                                 1500 John F. Kennedy Blvd.
                                                                 Suite 520
                                                                 Philadelphia, PA 19102
                                                                 Office: 215-423-5500
                                                                 Fax:   215-231-9847

                                                                 Attorneys for Plaintiff
                                                                 Rashaan Murphy